# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, Plaintiff, vs. BRUCE KENISON, Defendant. | No. CR08-3015-MWB<br><br>**REPORT AND RECOMMENDATION ON MOTION TO SUPPRESS** |

This matter is before the court on a motion to suppress (Doc. No. 30) filed by the defendant Bruce Kenison. Kenison is charged in a two-count indictment with possession with intent to distribute and distribution of methamphetamine. (Doc. No. 1) His indictment stemmed, in part, from evidence seized during execution of a search warrant on March 26, 2008, at his residence in Clear Lake, Iowa, and a rental house he owns that is next door to his residence. In Kenison's motion to suppress, he claims the officers who obtained the search warrant "deliberately, intentionally, and/or recklessly omitted truthful statements from [the] search warrant affidavit that were necessary to the finding of probable cause." (Doc. No. 30, ¶ 1)

In accordance with the trial management order (Doc. No. 16, § IV.A.), the undersigned held a hearing on the motion on July 11, 2008, at which Assistant U.S. Attorney John Lammers appeared on behalf of the Government, and Kenison appeared in person with his attorneys Jeremy J. Cross and Deena Townley. At the hearing, the court addressed the foundational issue of whether Kenison had made a sufficient showing for a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978). Under *Franks*, the court is required to hold a hearing "where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit,

and if the allegedly false statement is necessary to the finding of probable cause[.]" 438 U.S. at 155-56, 98 S. Ct. at 2676. Further,

> [i]n the event that at that hearing the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit.

438 U.S. at 156, 98 S. Ct. at 2676. The same principles apply to material information the defendant alleges was omitted from (rather than included in) a warrant affidavit.

Under *Franks*, before a defendant is entitled to a hearing, he must make a *substantial* preliminary showing that either relevant information was omitted from the affidavit, or false information was included in the affidavit, either intentionally or with reckless disregard for the truth. The substantiality requirement is not easily met. *See United States v. Hiveley*, 61 F.3d 1358, 1360 (8th Cir. 1995); *United States v. Wajda*, 810 F.2d 754, 759 (8th Cir. 1987). When no proof is offered that an affiant deliberately lied or recklessly disregarded the truth, a *Franks* hearing is not required. *United States v. Williams*, 477 F.3d 554, 557-58 (8th Cir. 2007) (citing *Franks*); *U.S. v. Moore*, 129 F.3d 989, 992 (8th Cir. 1997). "A mere allegation standing alone, without an offer of proof in the form of a sworn affidavit of a witness or some other reliable corroboration, is insufficient to make the difficult preliminary showing." *Moore*, 129 F.3d at 992 (citing *Franks*, 438 U.S. at 171); *see United States v. Ketzeback*, 358 F.3d 987 (8th Cir. 2004);[1]

---

[1] In *Ketzeback*, the court held:
> A facially valid warrant affidavit is constitutionally infirm if the defendant establishes the affidavit included deliberate or reckless falsehoods that, when redacted, render the affidavit's factual allegations insufficient to support a finding of probable cause. *Franks v. Delaware,* 438 U.S. 154, 171, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978). Omissions likewise can vitiate a warrant if the defendant proves "first that facts were omitted with

(continued…)

*United States v. Reivich*, 793 F.2d 957, 961 (8th Cir. 1986). The defendant also must show "that the allegedly false statement was necessary to a finding of probable cause or that the alleged omission would have made it impossible to find probable cause." *United States v. Mathison*, 157 F.3d 541, 548 (8th Cir. 1998).

At the hearing, Kenison examined Task Force Officer Toby Schissel briefly regarding the search warrant affidavit in this case. *See* Gov't Ex. 1, search warrant application and attachments. Schissel was the affiant who applied for the search warrant. He set forth the following details of the investigation in an Affidavit that is Attachment 1 to the search warrant application:

> On Wednesday, March 26, 2008 I assisted the North Central Iowa Narcotics Task Force [in] execut[ing] search warrants at several locations in Mason City, IA. The first search warrant that I went to was [address omitted], the residence of Heather Clark and Darren Douglas. Once inside the residence, Investigator Matt Klunder and I met with Heather in her and Darren's bedroom. Clark told us that she had been selling meth over the past couple of months. She stated specifically that she was selling to Joe Starr. Clark said that she would sell different amounts of meth to Starr. She stated the amounts sold would be more than an ounce at a time. Clark should be believed credible as she made several statements against her own penal interest, is an adult, is a long time resident of North Iowa, and she gave information that was corroborated by law enforcement and Joe Starr.
>
> The Task Force has received information on several occasions about Starr and his drug dealing in the North Iowa area. The information and sources of information state Starr is trafficking large quantities of meth. A search warrant was

---

[1](…continued)
the intent to make, or in reckless disregard of whether they make, the affidavit misleading, and, second, that the affidavit, if supplemented by the omitted information, could not support a finding of probable cause.'" *United States v. Allen,* 297 F.3d 790, 795 (8th Cir. 2002).
*Ketzeback*, 358F.3d 987, 990 (8th Cir. 2004).

executed on Starr's storage shed, his vehicles and his person. As a result of those searches, approximately four pounds of suspected marijuana and between one and two ounces of suspected methamphetamine ice were seized. I know from my training and experience that those are both dealer quantities. Starr was given his Miranda Rights and brought back to Chief Deputy Dave Hepperly's vehicle where Hepperly and I talked with him. Starr spoke of his drug dealing over the past several months and also revealed two sources where he was getting his meth.

Starr spoke of his most recent source, in which he purchased an ounce of methamphetamine last night from a man named Bruce who lives in Clear Lake. Starr said that Bruce lives on South Shore drive next to the Heartland Inn. Starr said that he would go over to Bruce's house and then Bruce would call some Hispanic males to come deliver the meth. Starr stated that on one occasion, Bruce would [make] the call and he saw the Hispanic males come out of the house located next to Bruce's. Starr said that there are two main Hispanic males who bring the meth over, but there have been other Hispanics bring the meth over. Starr stated that last night, the two main Hispanics who he saw come out of [address omitted] were the two who brought the meth over. Starr also stated that Kennison [sic] tries to keep him from knowing the Hispanics come from next door, but Starr suspected they came from there and also saw them come from there. Starr stated he bought meth from Bruce approximately a dozen times. Hepperly took Starr to Clear Lake and Starr showed the houses he was talking about. Bruce's house is [address omitted], and the house where the Hispanic men come from is [address omitted]. Cerro Gordo County master names show Bruce Kennison as living at [address omitted - same address as house shown to Hepperly by Starr].

Clear Lake water department shows the water bill for [the residence identified as Kenison's] as KMC vending, which is the business that Kennison [sic] owns. He also stated that Bruce has a black pickup truck. There is a black 2007 Chevy Truck in the driveway of Kennison's [sic] residence and there

are two older black Chevy Trucks in the driveway at [Kenison's residence].

Starr also went on to say that he has used meth with Kennison on a couple of occasions. Starr believes the Hispanic men bring over the pipes for smoking. Starr was asked if he had a scale for weighing his drugs. He stated that he may have left it at Kennison's [sic] house last night, but wasn't sure. He also stated that Kennison [sic] has a scale of his own for weighing drugs. Starr should be found credible due to him being an adult, giving statements against his own penal interest and information, which can be corroborated by law enforcement.

Within the last year, Investigator Matt Klunder received a Crime Stoppers report from a female. In the report, the female reported that she was a mother and she had gone to Bruce Kennison's [sic] house to pick up her daughter. When she picked up her daughter, she believed her daughter was high on drugs. Her daughter told her that she saw several baggies of a white-like substance lying on the table at Kennison's [sic].

Task Force Investigators have also received information in the past year from unknown sources that Kennison [sic] deals drugs, and that he supplies a female named Mary Kitner in Clear Lake, although no specific information was given. Investigators have seen Kennison's [sic] truck at her residence a few times while doing surveillance.

Within the past week, Deputy Frank Hodak and Deputy Lon Johnson, of the Cerro Gordo County Sheriff's Office, were advised by a concerned citizen that Kennison [sic] is messed up on drugs and not taking care of his vending business. This citizen was concerned for Kennison's [sic] well being, and this was the reason for sharing this information with Deputies.

I know through training and experience that drug dealers who are selling large quantities such as these will have drugs, paperwork, paraphernalia, cash and proceeds, and other evidence located at their residence. I also know that on

> occasion, drug dealers will keep drugs at another location to avoid being detected by law enforcement or other drug dealers. Through my training and experience, I believe in this case, Kennison [sic] uses both houses to further his drug business.

Gov't Ex. 1, pp. 8-10. In a separate attachment, Schissel summarized his training and experience in drug interdiction activities. *See id.*, pp. 3-4.

A search warrant was issued for Kenison's residence and the house next door based on Schissel's statements in the affidavits. The magistrate who reviewed the application denied a search warrant for Kenison's person. *See id.*, pp. 1, 6.

In his motion, Kenison argues Schissel "deliberately, intentionally, and/or recklessly omitted truthful statements from [his] search warrant affidavit that were necessary to the finding of probable cause." Doc. No. 30-2, p. 1. Specifically, he argues the officers should have informed the magistrate that Starr had been under surveillance for several months by Task Force officers, and although the investigation of Starr had led officers to a number of other potential co-conspirators in his drug-trafficking activities, there was never any reference to Kenison until Starr was interviewed the day of the search warrant application.

Schissel corroborated Kenison's assertion that the Task Force's lengthy investigation of the drug-trafficking conspiracy in which Starr was involved had yielded little or no information to tie Kenison to drug-related activities until Starr was interviewed on March 26, 2008. In addition, the evidence indicates Starr repeatedly denied that the marijuana found in the storage shed belonged to him. Further, the evidence indicates that when officers first began questioning Starr, he attempted to minimize his involvement in the drug conspiracy, but as the interview progressed and he was confronted about various factual discrepancies, he made increasing admissions regarding his involvement in the conspiracy. In addition, Starr made certain statements during his interview that either were suspect, or that officers knew to be untrue.

However, even taking all of these assertions as true for purposes of Kenison's motion, he still has failed to show that any of this information was omitted from Schissel's affidavit deliberately, intentionally, or recklessly. Further, the fact that, despite a lengthy investigation, the Task Force officers only became aware of Kenison on the day in question has no effect on whether the information presented to the magistrate was adequate to find probable cause for issuance of the warrant. Inclusion of the omitted facts would not "have made it impossible to find probable cause." *United States v. Mathison*, 157 F.3d 541, 548 (8th Cir. 1998). Simply stated, Kenison has failed to meet his substantial burden to justify a *Franks* hearing. "A mere allegation standing alone, without an offer of proof in the form of a sworn affidavit of a witness or some other reliable corroboration, is insufficient to make the difficult preliminary showing. *United States v. Moore*, 129 F.3d 989, 992 (8th Cir. 1997) (citing *Franks*).

The court finds Kenison is not entitled to a *Franks* hearing, and his motion to suppress should be denied. Objections to this Report and Recommendation must be filed by **July 25, 2008**. Responses to objections must be filed by **July 28, 2008**.

**IT IS SO ORDERED.**

**DATED** this 21st day of July, 2008.

PAUL A. ZOSS
CHIEF MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT