# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>BRUCE KENISON,<br><br>　　　　Defendant. | No. CR08-3015-MWB<br><br>**ORDER CONCERNING MAGISTRATE'S REPORT AND RECOMMENDATION REGARDING DEFENDANT'S MOTION TO SUPPRESS** |

_____

## I.  INTRODUCTION AND BACKGROUND

### A.  *Procedural Background*

On April 24, 2008, an indictment was returned against defendant Bruce Kenison charging him with distributing more than 5 grams of pure methamphetamine having previously been convicted of a felony drug offense, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), and 851, and possessing with intent to distribute 50 grams or more of methamphetamine within 1000 feet of a public park having previously been convicted of a felony drug offense, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), 851, and 860. Defendant Kenison filed a motion to suppress and application for a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978). In his motion, defendant Kenison seeks to suppress evidence found during the execution of a search warrant that was issued for his residence in Clear Lake, Iowa, as well as an adjacent rental house he owned. Defendant Kenison argues that the search warrant application omitted certain information, and that, absent those omissions, the search warrant application was not supported by probable cause.

Defendant Kenison's motion to suppress was referred to Chief United States Magistrate Judge Paul A. Zoss, pursuant to 28 U.S.C. § 636(b). Judge Zoss conducted an evidentiary hearing and then filed a Report and Recommendation in which he recommends that defendant Kenison's motion to suppress be denied. Judge Zoss concluded that defendant Kenison had not made the requisite showing to warrant a *Franks* hearing. Judge Zoss further concluded that there was no evidence to suggest that the law enforcement officer seeking the search warrant for defendant Kenison's residence deliberately or recklessly failed to include, or intentionally omitted in his affidavit information that would have detracted from probable cause. Neither the government nor defendant Kenison have filed objections to Judge Zoss's Report and Recommendation.

### B. *Factual Background*

In his Report and Recommendation, Judge Zoss made the following findings of fact:

> [Task Force Officer Toby] Schissel was the affiant who applied for the search warrant. He set forth the following details of the investigation in an Affidavit that is Attachment 1 to the search warrant application:
>
>> On Wednesday, March 26, 2008 I assisted the North Central Iowa Narcotics Task Force [in] execut[ing] search warrants at several locations in Mason City, IA. The first search warrant that I went to was [address omitted], the residence of Heather Clark and Darren Douglas. Once inside the residence, Investigator Matt Klunder and I met with Heather in her and Darren's bedroom. Clark told us that she had been selling methamphetamine over the past couple of months. She stated specifically that she was selling to Joe Starr. Clark said that she would sell different amounts of methamphetamine to Starr. She stated the

2

amounts sold would be more than an ounce at a time. Clark should be believed credible as she made several statements against her own penal interest, is an adult, is a long time resident of North Iowa, and she gave information that was corroborated by law enforcement and Joe Starr.

The Task Force has received information on several occasions about Starr and his drug dealing in the North Iowa area. The information and sources of information state Starr is trafficking large quantities of methamphetamine. A search warrant was executed on Starr's storage shed, his vehicles and his person. As a result of those searches, approximately four pounds of suspected marijuana and between one and two ounces of suspected methamphetamine ice were seized. I know from my training and experience that those are both dealer quantities. Starr was given his Miranda Rights and brought back to Chief Deputy Dave Hepperly's vehicle where Hepperly and I talked with him. Starr spoke of his drug dealing over the past several months and also revealed two sources where he was getting his methamphetamine.

Starr spoke of his most recent source, in which he purchased an ounce of methamphetamine last night from a man named Bruce who lives in Clear Lake. Starr said that Bruce lives on South Shore drive next to the Heartland Inn. Starr said that he would go over to Bruce's house and then Bruce would call some Hispanic males to come deliver the methamphetamine. Starr stated that on one occasion, Bruce would [make] the call and he saw the Hispanic males come out of the house located next to Bruce's. Starr said that there are two main Hispanic males who bring the methamphetamine over, but there have been other Hispanics bring the methamphetamine over. Starr stated that last night, the two main Hispanics who he

3

saw come out of [address omitted] were the two who brought the methamphetamine over. Starr also stated that Kennison [sic] tries to keep him from knowing the Hispanics come from next door, but Starr suspected they came from there and also saw them come from there. Starr stated he bought methamphetamine from Bruce approximately a dozen times. Hepperly took Starr to Clear Lake and Starr showed the houses he was talking about. Bruce's house is [address omitted], and the house where the Hispanic men come from is [address omitted]. Cerro Gordo County master names show Bruce Kennison as living at [address omitted - same address as house shown to Hepperly by Starr].

Clear Lake water department shows the water bill for [the residence identified as Kenison's] as KMC vending, which is the business that Kennison [sic] owns. He also stated that Bruce has a black pickup truck. There is a black 2007 Chevy Truck in the driveway of Kennison's [sic] residence and there are two older black Chevy Trucks in the driveway at [Kenison's residence].

Starr also went on to say that he has used methamphetamine with Kennison on a couple of occasions. Starr believes the Hispanic men bring over the pipes for smoking. Starr was asked if he had a scale for weighing his drugs. He stated that he may have left it at Kennison's [sic] house last night, but wasn't sure. He also stated that Kennison [sic] has a scale of his own for weighing drugs. Starr should be found credible due to him being an adult, giving statements against his own penal interest and information, which can be corroborated by law enforcement.

Within the last year, Investigator Matt Klunder received a Crime Stoppers report from a female. In the

report, the female reported that she was a mother and she had gone to Bruce Kennison's [sic] house to pick up her daughter. When she picked up her daughter, she believed her daughter was high on drugs. Her daughter told her that she saw several baggies of a white-like substance lying on the table at Kennison's [sic].

Task Force Investigators have also received information in the past year from unknown sources that Kennison [sic] deals drugs, and that he supplies a female named Mary Kitner in Clear Lake, although no specific information was given. Investigators have seen Kennison's [sic] truck at her residence a few times while doing surveillance.

Within the past week, Deputy Frank Hodak and Deputy Lon Johnson, of the Cerro Gordo County Sheriff's Office, were advised by a concerned citizen that Kennison [sic] is messed up on drugs and not taking care of his vending business. This citizen was concerned for Kennison's [sic] well being, and this was the reason for sharing this information with Deputies.

I know through training and experience that drug dealers who are selling large quantities such as these will have drugs, paperwork, paraphernalia, cash and proceeds, and other evidence located at their residence. I also know that on occasion, drug dealers will keep drugs at another location to avoid being detected by law enforcement or other drug dealers. Through my training and experience, I believe in this case, Kennison [sic] uses both houses to further his drug business.

Gov't Ex. 1, pp. 8-10. In a separate attachment, Schissel summarized his training and experience in drug interdiction activities. *See id.*, pp. 3-4.

A search warrant was issued for Kenison's residence and the house next door based on Schissel's statements in the

> affidavits. The magistrate who reviewed the application denied a search warrant for Kenison's person. *See id.*, pp. 1, 6.
>
> . . .
>
> . . . the Task Force's lengthy investigation of the drug-trafficking conspiracy in which Starr was involved had yielded little or no information to tie Kenison to drug-related activities until Starr was interviewed on March 26, 2008. In addition, the evidence indicates Starr repeatedly denied that the marijuana found in the storage shed belonged to him. Further, the evidence indicates that when officers first began questioning Starr, he attempted to minimize his involvement in the drug conspiracy, but as the interview progressed and he was confronted about various factual discrepancies, he made increasing admissions regarding his involvement in the conspiracy. In addition, Starr made certain statements during his interview that either were suspect, or that officers knew to be untrue.

Report and Recommendation at pp. 3-6 (footnote omitted). Upon review of the record, the court adopts all of Judge Zoss's factual findings.

## II. ANALYSIS

The court reviews the magistrate judge's report and recommendation pursuant to the statutory standards found in 28 U.S.C. § 636(b)(1):

> A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

28 U.S.C. § 636(b)(1) (2006); *see* Fed. R. Civ. P. 72(b) (stating identical requirements); N.D. IA. L.R. 7.1 (allowing the referral of dispositive matters to a magistrate judge but not articulating any standards to review the magistrate judge's report and recommendation). While examining these statutory standards, the United States Supreme Court explained:

> Any party that desires plenary consideration by the Article III judge of any issue need only ask. Moreover, while the statute does not require the judge to review an issue *de novo* if no objections are filed, it does not preclude further review by the district judge, *sua sponte* or at the request of a party, under a *de novo* or any other standard.

*Thomas v. Arn*, 474 U.S. 140, 154 (1985). Thus, a district court *may* review de novo any issue in a magistrate judge's report and recommendation at any time. *Id*. If a party files an objection to the magistrate judge's report and recommendation, however, the district court *must* "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). In the absence of an objection, the district court is not required "to give any more consideration to the magistrate's report than the court considers appropriate." *Thomas*, 474 U.S. at 150.

In this case, no objections have been filed. As a result, the court has reviewed the magistrate judge's report and recommendation under a clearly erroneous standard of review. *See Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir. 1996) (noting when no objections are filed and the time for filing objections has expired, "[the district court judge] would only have to review the findings of the magistrate judge for clear error"); *Taylor v. Farrier*, 910 F.2d 518, 520 (8th Cir. 1990) (noting the advisory committee's note to Fed. R. Civ. P. 72(b) indicates "when no timely objection is filed the court need only

7

satisfy itself that there is no clear error on the face of the record"). After conducting its review, the court is not "'left with [a] definite and firm conviction that a mistake has been committed,'" and finds no reason to reject or modify the magistrate judge's recommendation. *Anderson v. City of Bessemer City*, 470 U.S. 564, 573-74 (1985) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). Therefore, the court **accepts** Judge Zoss's Report and Recommendation, and orders that defendant Kenison's motion to suppress is **denied**.

**IT IS SO ORDERED.**

**DATED** this 31st day of July, 2008.

_____
MARK W. BENNETT
U. S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA